☐ Original  ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

### for the

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | |
| *or identify the person by name and address)* )  Case No. 20-1071M(NJ) | |
| Information associated with the Facebook account ) | |
| https://www.facebook.com/geraldgboogyboyd, ) | |
| more fully described in Attachment A. ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before    November 10, 2020    *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Honorable Nancy Joseph    .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    October 27, 2020 @ 4:51 p.m.    _____
*Judge's signature*

City and state:    Milwaukee, Wisconsin    Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information between May 1, 2020 and August 24, 2020 associated with the following Facebook page(s):

- "Gerald", URL: https://www.facebook.com/geraldgboogyboyd,

That are stored at premises owned, maintained, controlled, or operated by Facebook, a social networking company headquartered in Menlo Park, California.

# ATTACHMENT B

## Particular Things to be Seized

**Information to be disclosed by Facebook**

1. To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

   a. All contact and personal identifying information, including**:** full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

   b. All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

   c. All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them;

   d. All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the

groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

e. All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

f. All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

g. All "check ins" and other location information;

h. All IP logs, including all records of the IP addresses that logged into the account;

i. All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

j. All information about the Facebook pages that the account is or was a "fan" of;

k. All past and present lists of friends created by the account;

l. All records of Facebook searches performed by the account;

m. All audio messages sent by the account and messages received by the account;

n. All video messages sent by the account and to the account;

o. Any and all location data that is recorded by Facebook related to the account

p. All information about the user's access and use of Facebook Marketplace;

q. The types of service utilized by the user;

r. The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

s. All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

t. All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

**Information to be seized by the government**

48.     All information described above that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. 18 U.S.C. § 924(c) (Use of a firearm during the commission of a crime of violence) 18 U.S.C 922 (g)(1) (felon in possession of a firearm), 18 U.S.C. § 371 (conspiracy) since May 1, 2020 to August 24, 2020, for each user ID identified on Attachment A, information pertaining to the following matters:

a. The relevant offense conduct, any preparatory steps taken in furtherance of the scheme, communications between the suspect and others related to the relevant offense conduct in the above-listed crimes;

b.  Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

c.  Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

d.  The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

e.  The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of the above-listed crimes, including records that help reveal their whereabouts.

# UNITED STATES DISTRICT COURT

### for the

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | |
| *or identify the person by name and address)* ) | Case No.   20-1071M(NJ) |
| Information associated with the Facebook account ) | |
| https://www.facebook.com/geraldgboogyboyd, more fully described in ) | |
| Attachment A. ) | |

### APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 United States Code, Sections 924(c), 922(g)(1), 371 & 2119(2) | Use of a firearm during the commission of violence, felon in possession of a firearm, conspiracy and carjacking |

The application is based on these facts:

See Attached Affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Paul Kozelek - ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means).*

Date:   10/27/2020

*Judge's signature*

City and state:   Milwaukee, Wisconsin

Honorable Nancy Joseph

*Printed name and title*

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, PAUL KOZELEK, being first duly sworn, hereby depose and state as follows:

## I.    INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been employed in such capacity since January of 2020.  As an ATF Special Agent, I have completed training in cases related to the unlawful use of firearms, firearms trafficking, drug trafficking, arson, and explosives.

3.      Prior to my employment with ATF, I was a Sheriff's Deputy with the Jackson County Sheriff's Office in Black River Falls, WI. My duties included patrol, drafting and executing search warrants, and investigations related to state and county criminal violations.

4.       Previous to my tenure with the Jackson County Sheriff's Office, I served with the United State Marine Corps from 2004 until 2008, and United States Marine

Corps Reserve from 2011 until 2014. I left the Marine Corps as an E6/Staff Sergeant holding the billet of Platoon Commander.

5.      I received my bachelor's degree in Criminal Justice Administration from Viterbo University. La Crosse, WI in 2016.

6.      I have received training in the investigation of firearm and drug trafficking. Based on my training, experience, and participation in firearm trafficking investigations, I know and/or have observed the following:

    a.  I am trained to utilize informants to investigate firearm and drug trafficking. Through informant interviews and debriefings of individuals involved in those offenses, I have learned about the manner in which individuals and organizations distribute these items in Wisconsin and elsewhere;

    b.  I have also relied on informants to obtain firearms (as opposed to licensed gun dealers) and controlled substances from individuals on the streets, known as a controlled purchase;

    c.  I have experience conducting street surveillance of individuals engaged in firearm and drug trafficking. I have participated in the execution of numerous search warrants where drugs, firearms, ammunition, and magazines have been seized;

    d.  I am familiar with the language utilized over the telephone to discuss firearm and drug trafficking, and know that the language is often limited, guarded, and coded;

e. I know that firearm and drug traffickers often use electronic equipment to conduct these operations;

f. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

g. I know that firearm and drug traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate these and related offenses; and

h. I know that firearm and drug traffickers often use proceeds to purchase assets such as vehicles, property, jewelry, and narcotics. I also know that firearm and drug traffickers often use nominees to purchase and/or title these assets to avoid scrutiny from law enforcement officials. I also know that firearm and drug traffickers may keep photographs of these items on electronic devices.

i. I know that firearm and drug traffickers often use their electronic devices to connect to the internet and social media platforms such as Facebook to conceal and further illegal activities.

7. I have been trained in firearm and drug trafficking investigations that involve the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these computers, cellular phones, cameras, and other digital storage devices. In many occasions, this electronic data has provided evidence of the crimes being investigated and

corroborated information already known or suspected by law enforcement.

8.     The facts in this affidavit come from my personal observations, review of relevant police reports, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that with Suspect 1's Facebook account, https://www.facebook.com/geraldgboogyboyd, agents will contain evidence relevant to violations of 18 U.S.C. § 924(c) (Use of a firearm during the commission of a crime of violence) 18 U.S.C 922 (g)(1) (felon in possession of a firearm), 18 U.S.C. § 371 (conspiracy), 18 U.S.C 2119 (2) (carjacking).

## II.     JURISDICTION

10.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

11.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Facebook. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

### III.  <u>LOCATIONS TO BE SEARCHED</u>

12.     Facebook Account:  https://www.facebook.com/geraldgboogyboyd

("Gerald")

### IV. <u>PROBABLE CAUSE</u>

13.     On May 11, 2020, Suspect 1 (later identified as Legerald Boyd) purchased a silver over black Taurus model G2C P111 9mm handgun with serial number ABC367236 from Dunham's Sports located at 2550 S. 108th St in the city of West Allis, in the Eastern District of Wisconsin.

14.     On May 12, 2020 a Milwaukee Police Department ShotSpotter report showed a shooting incident at 1152 E. Walworth St. in the City of Milwaukee. A 9mm casing was recovered from that scene, however there were no witnesses, victims or suspects identified. The casing was entered into the National Integrated Ballistic Information Network (NIBIN), which also contains the Integrated Ballistic Identification System (IBIS). NIBIN and IBIS are an integrated system which examines expended ammunition casings for marks made from cycling through the action of a firearm. These marks are unique to each firearm and examiners are able to match casings from different crime scenes, and also to recovered firearms.

15.     On May 14, 2020, Legerald Boyd purchased an all black Taurus model G2C serial number ABC439460 9mm handgun from Dunham's Sports located at 2550 S. 108th St in the city of West Allis, Wisconsin.

16.     On July 10, 2020 the victim, Ali Sabri (M/W DOB 07/09/2000), was contacted on Facebook Messenger by a Facebook account named "Gerald." "Gerald" inquired about a vehicle that Mr. Sabri listed for sale on Facebook Marketplace under the

username "Ali Dulami." "Gerald" and Mr. Sabri discussed the sale of the vehicle and ended the conversation without agreeing on a price.

17. The following day, on July 11, 2020, Mr. Sabri was contacted again by Facebook account "Gerald" about the same vehicle. Another discussion commenced and they agreed upon a purchase price for the vehicle. They agreed to meet later that same day at the Avenue Wine and Liquor store located at 4075 S. Howell Ave in the City of Milwaukee, WI in the Eastern District of WI.

18. Later that day, Mr. Sabri met with two black males, later identified as Legerald Boyd (Suspect 1) (M/B DOB 03/09/1998) and Rashawn D. Boyd (Suspect 2) (M/B DOB 10/11/1995). Mr. Sabri stated that Suspect 1 and Suspect 2 were dropped off at Avenue Wine and Liquor by an unidentified third male driving a red or maroon minivan.

19. The suspects wished to test drive the vehicle Mr. Sabri had for sale, and Mr. Sabri permitted this. Mr. Sabri stated that during the test drive of the vehicle, Suspect 1 drove the vehicle, Suspect 2 was rear passenger side seat, and he (Sabri) was in the rear driver side seat. Mr. Sabri stated during the test drive, Suspect 2 presented a silver over black colored handgun and demanded Mr. Sabri's cell phone. Mr. Sabri fled the vehicle and was shot in the left hip. Suspects 1 and 2 then fled in Mr. Sabri's vehicle, which was later reported as stolen by Mr. Sabri.

20. A fired ammunition casing was recovered from the scene. This was entered into NIBIN. At that time there were no correlations to other recovered ammunition casings.

21.     After the robbery, Mr. Sabri was interviewed and presented two photo arrays by Milwaukee Police Department Detectives. The first array contained a photograph of Suspect 1, and the second contained a photograph of Suspect 2. When shown the first photo array, Mr. Sabri identified Suspect 1 as the person who had shot him. When shown the second photo array Mr. Sabri identified Suspect 2 as being the one who shot him stating "I think this is him, but the hair is different." Mr. Sabri then corrected his statement about Suspect 1, stating Suspect 1 was the one driving the vehicle. Mr. Sabri was clear that the two suspects who robbed him looked very similar, and he believed they could have been brothers. After reviewing both of the photo arrays, Mr. Sabri stated that Suspect 2 had been the one who had shot him, while Suspect 1 had been the one driving the vehicle.    It was later determined that the individuals identified by Mr. Sabri were in fact brothers. Suspect 1 was identified as Legerald Boyd and Suspect 2 as Rashawn Boyd.

22.     On August 5, 2020 Milwaukee Police Department Detectives went to the residence of Carmelita Wesley, the mother of Legerald and Rashawn Boyd, at 2772 N. 15th St. in the City of Milwaukee. The purpose was to locate Legerald Boyd and place him under arrest for his part in the robbery of Mr. Sabri. Carmelita Wesley consented to detectives entering the residence and Legerald Boyd was located and placed under arrest. While in the house, detectives observed a handgun which was described as an all black Taurus model G2C P111 9mm handgun with serial number ABC439460 in plain view, located in Legerald Boyd's bedroom on a nightstand. This is the same handgun which Legerald Boyd purchased from Dunham's Sports on May 14, 2020. This was

collected and later test fired. The ammunition casings were entered into NIBIN. No correlations were found at that time.

23. On August 24, 2020 Milwaukee Police officers observed Mr. Sabri's stolen vehicle being driven on N 20th St near W Clark St in the City of Milwaukee, in the Eastern District of WI. Officers attempted a traffic stop but the driver of the vehicle fled. After a pursuit of approximately 2.1 miles, officers were able to stop the stolen vehicle at 3265 N 30th St. in the City of Milwaukee, in the Eastern District of Wisconsin. Rashawn Boyd was found to be the driver and the front passenger was identified as Harvey Agee (M/B DOB 08/04/1999). Inside the vehicle in the front passenger side door map pocket was a silver over black Taurus G2C 9mm handgun with serial number ABC367236. This is the firearm purchased from Dunham's Sports by Legerald Boyd on May 11, 2020.

24. Also found in the vehicle was a bottle of 25 Oxycodone tablets, a second bottle containing two Oxycodone tablets, a clear plastic bag containing suspected marijuana, and a second plastic bag containing suspected marijuana. A field test later confirmed the suspected marijuana contained THC. A total of 27 tablets and 3.35g of marijuana was recovered.

25. The Taurus 9mm handgun with serial number ABC367236 was test fired and the ammunition casings were entered into NIBIN. The test fired casings matched the recovered casing from the May 12, 2020 shooting incident. This is a one day period of time from purchase to crime, and a 106 day period to recovery of the firearm.

26. A review of Rashawn Boyd's criminal history shows that he is a convicted felon. On June 21, 2018 he was convicted of felony hit and run causing great bodily harm (Milwaukee County Case 2017CF0044441), and felony hit and run causing injury

(Milwaukee County Case 2018CF000662). Based on his status as a convicted felon, he is prohibited by law from possessing a firearm under 18 U.S.C. 922(g)(1).

27.     Based on my training and experience, it is common for criminals to discuss their plans prior to the execution of a crime. Due to the one day period of time from purchase of the Taurus handgun by Legerald Boyd with serial number ABC367236 to the shooting on May 12, 2020, it is reasonable to believe there is incriminating communication contained within the suspect's Facebook account for a period of time prior to the commission of the crime.

28.     I believe that Legerald Boyd uses his Facebook account to facilitate violent crimes. Legerald Boyd later told Milwaukee Police Department investigators his Facebook account has a picture of a small child and a "Black Live Matter" banner surrounding US currency. Affiant verified the Facebook account https://www.facebook.com/geraldgboogyboyd is the same account Legerald Boyd described. ATF agents preserved Facebook account "Gerald", URL: https://www.facebook.com/geraldgboogyboyd, Facebook. Affiant believes that this Facebook account will have stored evidence of violations of § 18 U.S.C. § 924(c) (Use of a firearm during the commission of a crime of violence), 18 U.S.C 922 (g)(1) (felon in possession of a firearm), 18 U.S.C. § 371 (conspiracy). 18 U.S.C. 2119 (2) (carjacking).

## Facebook Generally

29.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their

accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

30.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

31.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

32.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.

Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

33.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

34.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video.  It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

35.     Facebook users can exchange private messages on Facebook with other users.  Those messages are stored by Facebook unless deleted by the user.

Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

36. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

37. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

38. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

39. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

40.     Facebook also has a Marketplace feature, which allows users to post free classified ads.   Users can post items for sale, housing, jobs, and other items on the Marketplace.

41.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform.  When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

42.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

43.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the

user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

44.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and

timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

45. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

46. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## REQUEST FOR SEALING

47. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed for a period of **one year**. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good

cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information between May 1, 2020 and August 24, 2020 associated with the following Facebook page(s):

- "Gerald", URL: https://www.facebook.com/geraldgboogyboyd,

That are stored at premises owned, maintained, controlled, or operated by Facebook, a social networking company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**Information to be disclosed by Facebook**

1.      To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

    a.  All contact and personal identifying information, including**:** full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

    b.  All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

    c.  All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them;

    d.  All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the

groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

e. All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

f. All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

g. All "check ins" and other location information;

h. All IP logs, including all records of the IP addresses that logged into the account;

i. All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

j. All information about the Facebook pages that the account is or was a "fan" of;

k. All past and present lists of friends created by the account;

l. All records of Facebook searches performed by the account;

m. All audio messages sent by the account and messages received by the account;

n. All video messages sent by the account and to the account;

o. Any and all location data that is recorded by Facebook related to the account

p. All information about the user's access and use of Facebook Marketplace;

q. The types of service utilized by the user;

r. The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

s. All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

t. All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

**Information to be seized by the government**

48.    All information described above that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. 18 U.S.C. § 924(c) (Use of a firearm during the commission of a crime of violence) 18 U.S.C 922 (g)(1) (felon in possession of a firearm), 18 U.S.C. § 371 (conspiracy) since May 1, 2020 to August 24, 2020, for each user ID identified on Attachment A, information pertaining to the following matters:

a. The relevant offense conduct, any preparatory steps taken in furtherance of the scheme, communications between the suspect and others related to the relevant offense conduct in the above-listed crimes;

b. Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

c. Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

d. The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

e. The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of the above-listed crimes, including records that help reveal their whereabouts.